# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| GREENVIEW BUILDERS AND | ) | Case No. 16-16636 |
| CABINETRY DESIGNERS, INC. | ) | (Jointly Administered) |
| | ) | |
| Debtor. | ) | Hon. Deborah L. Thorne |
| | ) | |

## SHAWN AND STEPHANIE MARKS PRELIMINARY RESPONSE TO MOTION TO MODIFY STAY

Shawn and Stephanie Marks (collectively, the "Marks"), through counsel, submit their preliminary response in opposition to the Motion to Modify Automatic Stay (the "Motion") of Adam and Janet Heiman (collectively, the "Heimans"), and state:

## INTRODUCTION

The Heimans seek to modify the automatic stay for the purpose of allowing a state court to adjudicate ownership of estate property. The asset in question is a performance guarantee deposit ("Guarantee Deposit") that Greenview Builders and Cabinetry Designers, Inc. ("Debtor") posted with the Village of Deerfield ("Village"). As the asset's name indicates, performance guarantee deposits secure completion of certain aspects of a construction project, in which case they are refunded to the contractor by operation of state statute, or else they fund the Village's completion of the various improvements. The Marks assert a perfected security interest in the Guarantee Deposit, along with other deposits posted by the Debtor, pursuant to citations to discover assets served on the Debtor and Village.

The Heimans' Motion should be denied for several reasons. First, the automatic stay is a summary proceeding and an inappropriate mechanism for determining whether the Guarantee Deposit is owned by the Debtor or the Heimans. Rather, any adjudication surrounding the

{10979-002 MOT A0449934.DOC 4}

estate's interest in the Guarantee Deposit should be made through adversary proceeding that affords the parties and satisfies all due process requirements. Second, this Court has core jurisdiction to determine if the Guarantee Deposit is property of the Debtor's estate, which authority should not be abdicated to a state court in a supplementary proceeding. Third, even assuming, *arguendo*, the Court were to proceed on the Motion as the Heimans request, additional discovery should be afforded and an evidentiary hearing required to fully adjudicate the factual disputes concerning the competing claims to the Guarantee Deposit. In fact, based on the arguments and information presented in the Motion, it would appear that the Debtor's purported assignment of the Guarantee Deposit is invalid and that the Guarantee Deposit remains an asset of the bankruptcy estate.

## LEGAL ARGUMENT

### A.  The Relief Sought in the Motion is Procedurally Improper

The Heimans seek relief from the automatic stay under § 362(d)(2)(A) on the basis that the Debtor lacks equity in the Guarantee Deposit. The Heimans' request is predicated on their argument that the Debtor purportedly "assigned" all rights and title it had in the Guarantee Deposit to them. The Heimans essentially argue that the Debtor lacks equity in the Guarantee Deposit because the deposit is not property of the estate. This position, which hinges solely on the validity and enforceability of the purported assignment, conflates the concepts of "property of the estate" with "equity in property of the estate."[1] The automatic stay only applies if the

---

[1] Section 541 of the Bankruptcy Code defines the property of a bankruptcy estate as "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). The term "legal or equitable interests of the debtor in property" has been broadly interpreted to include any legally enforceable right. *United States v. Whiting Pools, Inc.,* 462 U.S. 198, 204-05 (1983). The Seventh Circuit has explained that "every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach of § 541." *In re Yonikus,* 996 F.2d 866, 869 (7th Cir.1993). While state law defines the debtor's property interests, whether a debtor's particular interest is

2

property at issue is property of the estate. *In re DiGregorio*, 458 B.R. 436, 443 (Bankr. N.D. Ill. 2011). Accordingly, the Court must first conclude that the Debtor has an interest in the Guarantee Deposit before considering whether relief from the automatic stay is appropriate.

A stay relief motion is *not* the proper mechanism for determining interests in property. Such motions are only intended to be summary proceedings addressing limited issues that do not involve a full blown trial or a final adjudication on the merits of claims or defenses. *Matter of Vitreous Steel Products Co.,* 911 F.2d 1223, 1232 (7th Cir.1990). In contrast, the appropriate procedure to determine property interests is an adversary proceeding governed by Fed. R. Bankr. P. 7001(2) which must be commenced by a properly filed and served complaint.[2] *See In re Glenbrook Group, Inc.*, 552 B.R. 735, 738 (Bankr. N.D. Ill. 2016), *appeal pending*. In this case, the Heimans seek relief from the automatic stay for the purpose of obtaining a judicial determination as to who owns the Guarantee Deposit – either the Debtor's estate or the Heimans. This is procedurally improper because that determination *must* be made via an adversary proceeding. The Marks and the Trustee are in discussions concerning a potential arrangement by which the estate will share in recoveries from any deposits recovered from the Village. Once the Marks and the Trustee obtain Court approval of such an agreement, the parties will be in a position to file an adversary proceeding to determine the parties' respective interests in the Guarantee Deposit.

### B. A Determination of the Estate's Interest in the Guarantee Deposit Should Be Made in the Bankruptcy (Not State) Court

The Heimans contend the stay should be modified so that the state court can determine

---

property of the estate under § 541 of the Bankruptcy Code is a question of federal law. *Fisher v. Apostolou,* 155 F.3d 876, 880 (7th Cir.1998).

[2] Fed. R. Bankr. P. 7001(2) provides in relevant part that "a proceeding to determine the validity, priority or extent of a lien or other interest in property, other than a proceeding under Rule 4003(d)" is an adversary proceeding.

3

the Heimans' rights and remedies with respect to the Guarantee Deposit in the supplementary proceedings. However, a bankruptcy court's determination of what constitutes property of the estate is a core matter and "is precisely the type of proceeding over which the bankruptcy court has exclusive jurisdiction." *In re Ascher*, 128 B.R. 639, 644 (Bankr. N.D. Ill. 1991); *Glenbrook Group*, 552 B.R. at 738 ("If the debtor has any claim to the property and it is not covered by an exception, it is the bankruptcy court that determines distribution, not the creditor."); *In re Holstein*, 321 B.R. 229, 230 (Bankr. N.D. Ill. 2005) (matters requiring a determination of 'the nature and extent of the bankruptcy estate' are core proceedings). Here, the Debtor scheduled the deposits with the Village and other municipalities as its only significant asset potentially available for creditors. *See* Schedule A/B p.1 [Dkt. No. 2.] The determination of the estate's interest in its only significant assets is a core matter which should be determined by this Court.

## C. **If the Motion to Modify is Allowed to Proceed, It Will Fail on the Merits**

### 1. **The purported assignment is invalid on its face**

As assignment "is the transfer of some identifiable property, claim or right from the assignor to the assignee. The parties must intend to effectuate an assignment at the time of the transfer although no particular language or procedure is necessary…In order to determine whether an assignment has occurred, it is necessary to ascertain the intention of the parties." *Buck v. Illinois Nat. Bank & Trust Co.*, 79 Ill. App. 2d 101, 106 (2d Dist. 1967) (purported assignment held invalid where evidence did not sufficiently establish parties' intent). If there is not a sufficient writing to evidence the parties' intention, "it is necessary to scrutinize the surrounding circumstances and acts of the parties to ascertain their intentions." *Id*.

In the present case, there is no valid assignment of the Guaranty Deposit. The June 4, 2015 letter forming the basis of the Heimans' argument ("June Letter") does not provide them

4

with a legal right to the Guarantee Deposit presently in the possession of the Village. Indeed, there is nothing on the face of the letter that purports to assign or otherwise evidences the Debtor's intent to transfer its interests in the Guarantee Deposit to the Heimans.[3] Rather, the June Letter, at best, evidences an intent to transfer "Greenview's" interest in any *building permit* or *municipal permit* refunds. Had the Debtor intended to confer its legal interests in the performance guarantee deposits held by the Village, the June Letter would have stated as much. But, it does not.

In addition to assigning its rights to any building permit refunds, the June Letter goes on to state, "Greenview waives any deposit refunds concerning the above property." While this provision may arguably constitute a waiver (i.e., an intentional relinquishment of a known right) of the Debtor's right to the Guarantee Deposit, such waiver would not amount to an assignment and would not provide the Heimans with a legal interest in the Guarantee Deposit.

Further, it bears noting that the identity of the party purporting to assign its interests to the Heimans is unknown. The June Letter was executed by Yuri Birg in his capacity as President of "Greenview." But, there are multiple "Greenview" entities in which Yuri Birg serves as President – all of which are located as the same address identified in the letter. These include entities known as Greenview Home Design Center, Kitchens, Baths, Custom Homes, Additions, Inc. ("Greenview Home") and Greenview Group of Illinois, Inc. ("Greenview Group"). *See* Corporation File Detail Reports attached as Exhibit "1". Indeed, the website address identified in the letter would appear to belong to Greenview Home, and not the Debtor. It is impossible to ascertain from the June Letter which "Greenview" entity is the purported assignor. Consequently, the mere existence of the June Letter is not sufficient to establish that the *Debtor*

---

[3] A performance guarantee is a cash security deposit or letter of credit that acts as security for the proper completion of site grading and storm water drainage plan improvements that have been implemented by the Village. Village Code § 6-19.1(h).

5

intended to assign its legal rights to the Guarantee Deposit and is not a basis to modify the automatic stay.[4]

### 2. The June Letter is not legally enforceable

Assignments are "subject to the same requisites of validity as are other contracts, such as intent, mutuality of assent, capacity to contract, legal subject matter, and consideration." *Northwest Diversified, Inc. v. Desai*, 353 Ill. App. 378, 387 (1st Dist. 2004) (assignment held invalid where there was no evidence of intent to transfer and where alleged conveyance lacked consideration.). Here, the June Letter is not a valid and enforceable contract and therefore cannot be considered an effective assignment. Specifically, the letter is merely a declaration of "Greenview's" intent to transfer permit refunds not at issue here to the Heimans and nothing more. Neither the Motion nor the June Letter itself sheds any light on the parties' intent behind the transaction, and there is nothing establishing mutual assent or mutuality of obligation.

It is likewise unclear what if any consideration was given for the purported assignment. "Valuable consideration for a contract consists of some right, interest, profit or benefit accruing to one party, or some forbearance, detriment, loss or responsibility given, suffered or undertaken by the other." *F.H. Prince Co., Inc. v. Towers Financial Corp.*, 275 Ill. App. 3d 792, 798-99 (1st Dist. 1995). The general rule is that consideration must flow from both parties. *Moehling v. W.E. O'Neil Constr. Co.*, 20 Ill. 2d 255, 265 (1960). Stated another way, "there must be consideration, and it must flow from both parties, and in the direction of each of the parties to the

---

[4] Irrespective of the validity of the purported assignment, it is unclear whether the Village is authorized to deliver the Guarantee Deposit to the Heiman's or any party other than the Debtor given its status as the builder/developer. The Illinois Code provides that, where a municipality requires a cash bond to secure a permit, "the municipality *shall* refund a cash bond to a *builder* or *developer*…within 60 days after the builder or developer notifies the municipality in writing of the completion of the project improvement for which the bond was required." 11-39-3(c).

6

agreement." 12 Ill. Law and Prac. Contracts § 41 (2013). "Consideration for a contract must either be expressed in words, or implied from the very nature of the contract." *Id.*

In this instance, the June Letter is completely silent with respect to the consideration given by the Heimans or received by "Greenview." The Motion likewise fails to offer any explanation as to what was given or received by the parties in exchange for Yuri Birg's execution of the letter. Indeed, all that is known is the Heimans entered into a construction contract with the Debtor in February 2014, the contract was terminated by the Heimans in June 2015, and "Greenview" executed the letter afterwards. Without significantly more information establishing the nature of the relationship between the Heimans and the Debtor, the purpose of the June Letter, and the benefits received and/or detriments suffered by the parties, there is simply no legal basis for the Court to recognize the letter as a valid assignment of the Guarantee Deposit. Consequently, the Motion should fail.

### D. Even if the if the Purported Assignment is Effective, Discovery is Needed to Determine Whether the Heimans Possess a Superior Interest in the Guarantee Deposit

There is no dispute that the valid service of a citation to discover assets creates a lien on all of the judgment debtor's non-exempt personal property. 735 ILCS 5/2-1402(m)(1); *In re Porayko*, 705 F.3d 703, 704 (7th Cir. 2013). The Marks, after obtaining their $415,000 judgment against the Debtor in September 2015, served the Village with their initial third-party citation to discover assets on or about October 15, 2015. Consequently, the Marks have a secured lien on all assets of the Debtor in the Village's possession.

According to the Village, it is in possession of approximately $234,488.72 in performance guarantee deposits relating to sixteen (16) different single family homes, including the $11,500 Guarantee Deposit associated with the Heimans' Property. *See* First Amended

7

Answer of Third Party Citation Respondent Village of Deerfield, a copy of which is attached as Exhibit "2". The Heimans' contend that the Marks' lien rights do not attach to the Guarantee Deposit because that asset was assigned by and transferred from the Debtor on June 4, 2015 and thus was not an asset of the Debtor's estate when the Marks' citation lien was perfected in October.

But, the information contained in the Village's responses to the Marks' citation raises serious doubts as to the veracity of the Heimans' position. Specifically, in its original citation Answer filed in January 2016, the Village identified the Guarantee Deposit, but had no record of the purported assignment by the Debtor. *See* Answer of Third Party Citation Respondent Village of Deerfield, Ex. A, a copy of which is attached as Exhibit "3". Indeed, as of January 2016, the Village's records identified the Guarantee Deposit as an asset of the Debtor's estate.

In March 2016, the Village filed its Amended Answer to the citation and again indicated that it was in possession of the Guarantee Deposit. However, the Village's records had been revised to reflect that the Guarantee Deposit had been assigned to the Heimans effective June 4, 2015. *See* Amended Answer, Ex. B. Appended to the Amended Answer are copies all assignment documents purportedly transferring the Debtor's interest in its guarantee deposits to the various homeowners, including the Heimans. *See* Amended Answer, Ex. C. Interestingly, of the nine (9) assignment documents produced by the Village, all *but* the Heimans' letter were stamped "RECEIVED." Perhaps coincidentally, the Village stamp is conspicuously absent from the June Letter. This begs the question as to why the June Letter was missing from the Village's records in January 2016 only to suddenly appear two (2) months later without any proof as to when it was filed with the Village or how it came to be in the Village's possession.

8

Because the Motion is predicated on the argument that the Marks' lien rights do not attach to the Guarantee Deposit as a result of the Debtor's supposed assignment, it is imperative that the Marks be given an opportunity to explore the facts surrounding the execution of the June Letter and its delivery to the Village. Thus, to the extent the Court allows the Heiman's Motion to proceed, the Marks should be afforded additional time to conduct sufficient discovery.

## CONCLUSION

For those reasons stated above, the Court should deny the Heimans' Motion to Modify Automatic Stay. Alternatively, to the extent the Court allows the Motion to proceed, the Marks should be allowed additional time to conduct sufficient discovery with respect to the June Letter and Guarantee Deposit and given leave to supplement this response.

Respectfully submitted,

Shawn and Stephanie Marks

Dated: September 9, 2016                By:/s/ *Allen J. Guon*
                                                  One of their attorneys

Allen J. Guon (#6244526)
Joseph L. Cohen (#6279024)
S. Jarret Raab (#6294632)
Shaw Fishman Glantz & Towbin LLC
321 North Clark Street, Suite 800
Chicago, Illinois 60610

*Counsel for Shawn and Stephanie Marks*

9

<u>**CERTIFICATE OF SERVICE**</u>

Allen Guon certifies that he caused to be served a true copy of the above and foregoing notice and the **SHAWN AND STEPHANIE MARKS PRELIMINARY RESPONSE TO MOTION TO MODIFY STAY** upon the CM/ECF Electronic Mail Notice List via the CM/ECF system and upon the attached service list via e-mail on September 8, 2016.

*/s/ Allen J. Guon*

# Mailing Information for Case 16-16636

## Electronic Mail Notice List

The following is the list of **parties** who are currently on the list to receive email notice/service for this case.

- John E Gierum    john@gierummantas.com, IL25@ecfcbis.com
- Kathryn Gleason    USTPRegion11.es.ecf@usdoj.gov, Kathryn.M.Gleason@usdoj.gov
- Allen J Guon    aguon@shawfishman.com, cowens@shawfishman.com
- Harold D. Israel    haroldi@restructuringshop.com, seanw@restructuringshop.com;teresag@restructuringshop.com
- David A. Kallick    dkallick@bgalawfirm.com
- Patrick S Layng    USTPRegion11.ES.ECF@usdoj.gov
- Michelle G Novick    mgnovick@arnstein.com, lcsolomon@arnstein.com
- John M. Sheldon    jsheldon@wiczersheldon.com, ewiczer@wiczersheldon.com;hrelyea@wiczersheldon.com
- Mark Van Donselaar    mvandonselaar@grayslakelaw.com
- Elliot Wiczer    ewiczer@fflegal.com

## Manual Notice List

The following is the list of **parties** who are **not** on the list to receive email notice/service for this case (who therefore require manual noticing/service). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

Alan Howard Nelson
Trott Nelson PC
1000 Jorie Blvd.
Suite 359
Oak Brook, IL 60523